UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

APPEAL NUMBER: 12-13260-P

---

ANTHONY FARINA
Petitioner-Appellant,

v.

SECRETARY, DEPARTMENT OF CORRECTIONS, and
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

---

ANSWER BRIEF OF RESPONDENTS-APPELLEES

---

PAMELA JO BONDI
ATTORNEY GENERAL

KENNETH S. NUNNELLEY
SENIOR ASSISTANT ATTORNEY GENERAL
Florida Bar #998818
444 Seabreeze Blvd. 5th FL
Daytona Beach, FL 32118
(386) 238-4990
Fax - (386) 226-0457
Ken.Nunnelley@myfloridalegal.com
CapApp@myfloridalegal.com

*FARINA v. SECRETARY, DEPARTMENT OF CORRECTIONS*

**12-13260-P**

**CERTIFICATE OF INTERESTED PERSONS**

Honorable Harry Lee Anstead, Florida Supreme Court Justice

Honorable Kenneth B. Bell, (former) Florida Supreme Court Justice

Honorable Uriel Blount, Sentencing Judge

Pamela Jo Bondi, Attorney General

Robert A. Butterworth, (former) Attorney General, State of Florida

Rosemary Calhoun, Assistant State Attorney

Honorable Raoul G. Cantero, (former) Florida Supreme Court Justice

Charlie Crist, (former) Attorney General, State of Florida

Jeffrey L. Dees, (after resentencing)Attorney Direct Appeal

Honorable Stephen H. Grimes, (former) Florida Supreme Court Justice

Kimberly Gordon, victim

Mark Gruber, Assistant Capital Collateral Regional Counsel

Honorable Major B. Harding, (former) Florida Supreme Court Justice

Bill Jennings, Capital Collateral Regional Counsel-Middle

*FARINA v. SECRETARY, DEPARTMENT OF CORRECTIONS*

12-13260-P

Honorable Gerald Kogan, (retired) Florida Supreme Court Justice

Bill McCollum, Attorney General, (former) State of Florida

Honorable R. Fred Lewis, Florida Supreme Court Justice

Derek Mason, victim

Thomas R. Mott, Trial Attorney

Kenneth S. Nunnelley, Senior Assistant Attorney General

Honorable Ben F Overton, (retired) Florida Supreme Court Justice

Honorable Barbara J. Pariente, Florida Supreme Court Justice

Marie-Louise Samuels Parmer, Counsel of Record

Honarable Peggy A. Quince, Florida Supreme Court Justice

Gary Robinson, Victim

Honorable Leander J. Shaw, (retired) Florida Supreme Court Justice

Honorable C. McFerrin Smith, III, Circuit Judge

Michelle Van Ness, deceased

Honorable Charles T. Wells, Florida Supreme Court Justice

C – 2 of 2

**TABLE OF CONTENTS**

## Contents

CERTIFICATE OF INTERESTED PERSONS......................C-1 and C-2

TABLE OF CONTENTS............................................. i

TABLE OF AUTHORITIES........................................ iii

STATEMENT REGARDING ORAL ARGUMENT............................. 1

STATEMENT REGARDING ADOPTION OF BRIEFS........................ 1

OF OTHER PARTIES............................................. 1

STATEMENT OF JURISDICTION.................................... 1

STATEMENT OF THE ISSUES..................................... 1

THE *AMICUS* BRIEFS.......................................... 2

STATEMENT OF THE CASE AND FACTS.............................. 3

STANDARD OF REVIEW.......................................... 17

SUMMARY OF THE ARGUMENT..................................... 21

ARGUMENT.................................................... 22

  I. THE "PROSECUTORIAL ARGUMENT" CLAIM...................... 22

  II. THE CO-DEFENDANT'S SENTENCE CLAIM...................... 30

  III. THE *BATSON* CLAIM.................................... 42

CONCLUSION.................................................. 46

CERTIFICATE OF COMPLIANCE................................... 47

CERTIFICATE OF SERVICE...................................... 47

## TABLE OF AUTHORITIES

### Cases

*Armstrong v. State*,
  642 So. 2d 730 (Fla. 1994) ................................... 8

*Atwater v. Crosby*,
  451 F.3d 799 (11th Cir. 2006) .............................. 28

*Baldwin v. Johnson*,
  152 F.3d 1304 (11th Cir. 1998) .......................... 28, 39

*Blanco v. State*,
  702 So.2d 1250 (Fla. 1997) ................................. 13

*Borden v. Allen*,
  646 F.3d 785 (11th Cir. 2011) .............................. 21

*Bottoson v. Moore*,
  234 F.3d 526 (11th Cir. 2000) .............................. 19

*Brecht v. v. Abrahamson*,
  507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ........ 29

*Brennan v. State*,
  754 So. 2d 1 (Fla. 1999) ............................... passim

*Chandler v. Moore*,
  240 F.3d 907 (11th Cir. 2001) .............................. 25

*Cone v. Bell*,
  556 U.S. ----, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) ....... 18

*Crowe v. Hall*,
  490 F.3d 840 (11th Cir. 2007) .............................. 18

*Darden v. Wainwright*,
  477 U.S. 168, 106 S.Ct. 2464 (1986) ........................ 22

*Diaz v. Sec'y for the Dep't of Corr.*,
  402 F.3d 1136 (11th Cir. 2005) ............................. 19

*Doorbal v. Department of Corrections*,
  572 F.3d 1222 (11th Cir. 2009) ............................. 28

*Early v. Packer*,
  537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) ....... 20, 21

*Eddings v. Oklahoma*,
  455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ........ 32, 38

*Farina (Jeffery) v. State*,
  680 So. 2d 392 (Fla. 1996) ........................... 4, 5, 11

*Farina (Jeffery) v. State*,
  763 So. 2d 302 (Fla. 2000) ...................... 6, 10, 11, 33

*Farina v. Secretary, Dept. of Corrections*,
  2012 WL 1016723 (M.D. Fla. Mar. 26, 2012) .............. 16, 17

*Farina v. State*,
  679 So. 2d 1151 (Fla. 1996) .......................... 3, 4, 5

*Farina v. State*,
  801 So. 2d 44 (Fla. 2001) .............................. passim

*Farina v. State*,
  937 So. 2d 612 (Fla. 2006) ............................. passim

*Fotopoulos v. Secretary, Dept. of Corrections*,
  516 F.3d 1229 (11th Cir. 2008) ............................ 18

*Gill v. Mecusker*,
  633 F.3d 1272 (11th Cir. 2011) ............................ 20

*Groover v. State*,
  703 So. 2d 1035 (Fla. 1997) ........................... 10, 12

*Hammond v. Hall*,
  586 F.3d 1289 (11th Cir. 2009) ........................ 22, 23

*Harrell v. State*,
  894 So. 2d 935 (Fla. 2005) ................................. 8

*Harrington v. Richter*,
  --- U.S. ----, 131 S.Ct. 770, --- L.Ed.2d ---- (2011) ... 19, 20

*Hazen v. State*,
  700 So. 2d 1207 (Fla. 1997) .................... 36, 37, 38, 39

*Heath v. Jones*,
  941 F.2d 1126 (11th Cir. 1991) ............................... 24

*Hendrix v. State*,
  908 So. 2d 412 (Fla. 2005) ................................. 8, 9

*Henyard v. State*,
  689 So. 2d 239 (Fla. 1996) ................................... 33

*Hightower v. Terry*,
  459 F.3d 1067 (11th Cir. 2006) ............................... 43

*Hitchcock v. Dugger*,
  481 U.S. 393, 107 S.Ct. 1821 (1987) .......................... 32

*Jennings v. State*,
  718 So. 2d 144 (Fla. 1998) ............................... 36, 38

*Jones v. Barnes*,
  463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ..... 23, 24

*Jones v. State*,
  709 So. 2d 512 (Fla. 1998) ............................... 10, 13

*Knowles v. Mirzayance*,
  556 U.S. ----, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) ....... 18

*Larzelere v. State*,
  676 So. 2d 394 (Fla. 1996) ................................... 33

*Lawrence v. State*,
  846 So. 2d 440 (Fla. 2003) ................................... 41

*Lindh v. Murphy*,
  521 U.S. 320,  117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) ... 18, 39

*Lindsey v. Smith*,
  820 F.2d 1137 (11th Cir. 1987) ............................... 27

*Lockett v. Ohio*,
  438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) .......... 31

*Marquard v. Sec'y for the Dep't of Corr.*,
  429 F.3d 1278 (11th Cir. 2005) ............................... 19

*Marquard v. State*,
  850 So. 2d 417 (Fla. 2002) .................................. 12

*Martin v. State*,
  2012 WL 4125813 (Fla. Sept 20, 2012) ....................... 38

*Mason v. Allen*,
  605 F.3d 1114 (11th Cir. 2010) ............................. 19

*McCleskey v. Kemp*,
  481 U.S. 279 –07, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) ..... 17

*McDaniel v. Brown*,
  558 U.S. ----, 130 S.Ct. 665, --- L.Ed.2d ---- (2010) ....... 18

*Melbourne v. State*,
  679 So. 2d 759 (Fla. 1996) ................................. 15

*Miller-El v. Cockrell*,
  537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ....... 20

*Miller-El v. Dretke*,
  545 U.S. 231, 125 S.Ct. 2317 (2005) ........................ 46

*Neelley v. Nagle*,
  138 F.3d 917 (11th Cir. 1998) .............................. 21

Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001)........... 21

*Parker v. Head*,
  244 F.3d 831 11th Cir. 2001) ............................... 40

*Ponticelli v. Secretary, Florida Dept. of Corrections*,
  690 F.3d 1271 (11th Cir. 2012) ............................. 38

*Porter v. McCollum*,
  --- U.S. ----, ----, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) .. 40

*Powell v. Allen*,
  602 F.3d 1263 (11th Cir. 2010) ............................. 18

*Provenzano v. Dugger*,
  561 So. 2d 541 (Fla. 1990) ................................. 23

*Pulley v. Harris*,
  465 U.S. 37 (1984) ................................. 34, 35, 37

*Putman v. Head*,
  268 F.3d 1223 (11th Cir.2001) ............................... 19

*Randolph v. State*,
  853 So. 2d (Fla. 2003) ...................................... 9

*Renico v. Lett*,
  130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) ..................... 18

*Richardson v. State*,
  437 So. 2d 1091 (Fla. 1983) ................................. 8

*Robinson v. State*,
  487 So. 2d 1040 (Fla. 1986) ................................ 11

*Robinson v. State*,
  865 So. 2d 1259 (Fla. 2004) ............................ 10, 13

*Rodriguez v. State*,
  753 So. 29(Fla. 2000), .................................... 15

*Romine v. Head*,
  253 F.3d 1349 (11th Cir. 2001) ............................. 29

*Rutherford v. Moore*,
  774 So. 2d 637 (Fla. 2000) ............................... 8, 9

*Schriro v. Landrigan*,
  550 U.S. 465, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ....... 18

*Schwab v. Crosby*,
  451 F.3d 1308 (11th Cir. 2006) ............................. 19

*Scott v. Dugger*,
  604 So. 2d 465 (Fla. 1992) .................... 10, 11, 12, 34

*Shere v. Secretary, Florida Dept. of Corrections*,
  537 F.3d 1304 (11th Cir. 2008) ......................... 26, 29

*Smith v. Murray*,
  477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) ........ 24

*Smith v. Spisak*,
  558 U.S. ----, 130 S.Ct. 676, --- L.Ed.2d ---- (2010) ....... 18

*Smith v. Texas*,
  543 U.S. 37, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004) .......... 32

*Sochor v. Florida*,
  504 U.S. 527, 112 S.Ct. 2114 (1992) ........................ 27

*Steinhorst v. State*,
  412 So. 2d 332 (Fla. 1982) ................................. 8

*Torres v. Secretary, Department of Corrections*,
  336 Fed. Appx. 924 (11th Cir. 2009) ........................ 28

*Turner v. Dugger*,
  614 So. 2d 1075 (Fla. 1993) ............................ 10, 34

*Valle v. Moore*,
  837 So. 2d 905 (Fla. 2002) ................................ 23

*Ventura v. State*,
  794 So. 2d 553 (Fla. 2001) ........................ 10, 11, 12

*Waddington v. Sarausad*,
  555 U.S. ----, 129 S.Ct. 823, 172 L.Ed.2d 532 (2009) ....... 18

*Walls v. Buss*,
  658 F.3d 1274 (11th Cir. 2011) ............................ 43

*Wellons v. Hall*,
  558 U.S. ----, 130 S.Ct. 727 ,
  --- L.Ed.2d ---- (2010) ................................... 18

*Williams v. Taylor*,
  529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) .... passim

*Woodford v. Visciotti*,
  537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ......... 18

*Yarborough v. Alvarado*,
  541 U.S. 652, 124 S.Ct. 2140 , 158 L.Ed.2d 938 (2004) ...... 20

*Zack v. State*,
  911 So. 2d 1190 (Fla. 2005) ................................ 9

**<u>Statutes</u>**

§ 2254(d)............................................... passim

§ 2254(d)(2).............................................. 19

§ 2254(e)(1).......................................... 19, 40

28 U.S.C. §1291............................................ 1

28 U.S.C. §2254............................................ 1

*Florida Constitution article* I, section 17 ................... 6

*Florida Constitution article* V, section 3(b)(1)............ 3, 5

**<u>Rules</u>**

FRAP 32(a)(7)(B)........................................... 47

## STATEMENT REGARDING ORAL ARGUMENT

The Respondents-Appellees (hereinafter "the State") defer to this Court as to whether oral argument would be helpful in this case.

## STATEMENT REGARDING ADOPTION OF BRIEFS
## OF OTHER PARTIES

The State does not adopt any part of a brief filed by any other party.

## STATEMENT OF JURISDICTION

This is an appeal from the District Court's denial of habeas corpus relief pursuant to a petition filed pursuant to 28 U.S.C. §2254. This Court's jurisdiction is based on 28 U.S.C. §1291. The District Court entered a final order denying all relief on March 26, 2012. (RE71). The order appealed from is, in all respects, a final order that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

Whether there is any clearly established federal law that supports granting relief on any issue?

Whether the "prosecutorial argument" claim was properly denied on procedural default grounds?

Whether sentence proportionality is reviewable in a habeas proceeding?

Whether the credibility determinations of the Florida courts about the "dominion and control" sub-claim are due deference?

Whether the denial of relief on the *Batson* claim was contrary to, or an unreasonable application of, clearly established federal law?

## THE *AMICUS* BRIEFS

The *amicus* brief filed by Americans United *et. al* is directed toward Claim I. That brief, which is 39 pages in length, seems to be focused on opposition to capital punishment, attacks on the trial prosecutor (who is described as a "polarizing figure"), and a general expansion of the page limitations imposed on principal briefs by this Court. No argument advanced by the *amici* acknowledges the double layer of procedural default barring review of this claim, nor do the *amici* acknowledge that the "biblical" references came during cross-examination of a defense witness who had been called by Farina for the purpose of using religion as mitigation. The *amici* have no particular expertise in capital litigation, and have nothing to offer that is relevant in the context of this case, which turns on well-settled habeas law with which this Court is well familiar.

The *amicus* brief of the Italian Ambassador contains no argument on any issue contained in this appeal. Farina has never

claimed to be an Italian citizen, and there is no support for that assertion. Moreover, this Court did not grant a certificate of appealability on any matter discussed in the *amicus* brief. Because that is so, that brief is of no help at all to this Court and should be stricken. Finally, whether the appellant's father was actually named "Farina" is, according to the penalty phase testimony of his mother, open to serious question. (AA, F-25, pp. 1936-37).

## STATEMENT OF THE CASE AND FACTS

THE DIRECT APPEAL

On direct appeal from his conviction and sentence of death, the Florida Supreme Court summarized the facts of the case:

> Jeffery A. Farina, a prisoner under sentence of death, appeals his conviction of first-degree murder and the penalty imposed. He also appeals his convictions and six consecutive life sentences for three counts of attempted first-degree murder, armed robbery, burglary with a battery, and conspiracy to commit first-degree murder. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.

> We affirm all of Farina's convictions, and we affirm the sentences for the noncapital offenses. We vacate his death sentence, however, because we find that the trial court erroneously excused for cause a prospective juror who was qualified to serve.

> Farina and his brother, Anthony J. Farina, were tried together and convicted of fatally shooting seventeen-year-old Michelle Van Ness during the May 1992 robbery of a Taco Bell restaurant in Daytona Beach. *See also Anthony J. Farina v. State*, 679 So. 2d 1151 (Fla. 1996). Jeffery Farina fired the shot to the head that killed Van Ness.

3

. . .

Van Ness and the other three victims all worked at
Taco Bell. After the restaurant closed early on May 9,
1992, Jeffery and Anthony Farina confronted Van Ness
and Derek Mason, 16, while the two employees were
emptying trash. Jeffery was armed with a .32-caliber
pistol, Anthony carried a knife and rope, and both
wore gloves.

The Farinas ordered Van Ness and Mason into the
restaurant, where they rounded up two other employees.
Jeffery held three employees at gunpoint, while
Anthony forced employee Kimberly Gordon, 18, to open
the safe and hand over the day's receipts. Although
there were assurances that no one would be hurt, the
Farinas tied the employees' hands behind their backs
and Anthony forced them into a walk-in freezer.

Survivors testified that Van Ness was shaking and
crying as she entered the freezer and she was afraid
she would be hurt. Shortly after the employees were
led to the freezer, Jeffery shot Mason in the mouth.
He then shot employee Gary Robinson, 19, in the chest,
and finally shot Van Ness in the head. Gordon was
stabbed in the back.

The Farinas fled the restaurant, but were arrested
later that day after another Taco Bell employee saw
Anthony buying gasoline at a service station and
called the police. When arrested, Jeffery had a
receipt from a local store indicating that he had
purchased .32-caliber bullets, gloves, and clothesline
on May 8. The Farinas had $1,885 of the $2,158 that
was taken from Taco Bell.

Van Ness died on May 10. The Farinas were charged with
first-degree murder and six other offenses.

*Farina (Jeffery) v. State*, 680 So. 2d 392, 394-395 (Fla. 1996).[1]

---

[1] The Florida Supreme Court described the cases as follows:

In Farina's first direct appeal, we referred to his
brother's direct appeal for the factual and procedural
background of the case. *Farina v. State*, 679 So. 2d
1151, 1153 (Fla. 1996). Therefore, the facts are taken

4

THE RESENTENCING FACTS

The Florida Supreme Court described the resentencing proceedings in the following way:

> Anthony Joseph Farina appeals the imposition of the death penalty upon resentencing. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons expressed below, we affirm the death sentence.
>
> Anthony [FN1] and his brother Jeffery Farina were convicted and sentenced to death for the fatal shooting of Michelle Van Ness during the robbery of a Taco Bell restaurant in Daytona Beach in 1992. The record shows that both brothers planned and participated in the robbery, but that Jeffery actually fired the fatal shot, shot two other restaurant employees, and stabbed the assistant manager in the back after his gun misfired.
>
> > [FN1] Because the codefendant brothers share the same surname, this opinion will refer to the appellant and his codefendant by their given names to avoid confusion.
>
> On appeal, this Court affirmed Anthony's conviction for first-degree murder, but vacated his death sentence and remanded for a new sentencing proceeding due to error in the jury selection process. *See Farina (Anthony) v. State,* 679 So. 2d 1151, 1157 (Fla. 1996). We also remanded codefendant Jeffery's case for resentencing due to the same error. *See Farina (Jeffery) v. State,* 680 So. 2d 392, 396-99 (Fla. 1996). On remand, a joint penalty proceeding was held before a new jury. By a vote of twelve to zero the jury recommended the death penalty for each defendant.

---

from the direct appeal of Jeffrey Farina, *see Farina v. State*, 680 So. 2d 392, 394 (Fla. 1996), as well as Anthony's direct appeal, *Farina,* 679 So. 2d at 1153, and Anthony's second direct appeal. *See Farina v. State*, 801 So. 2d 44, 48-49 (Fla. 2001).

*Farina v. State*, 937 So. 2d 612, 616 n. 1 (Fla. 2006).

5

The trial court followed the jury recommendation and sentenced both defendants to death.

In imposing the death penalty on Anthony, the trial judge found five aggravating factors: (1) defendant was previously convicted of another capital felony or felony involving the use or threat of violence based upon the attempted murders of the other restaurant employees; (2) the murder was committed to avoid arrest; (3) the murder was committed for pecuniary gain; (4) the murder was heinous, atrocious, or cruel (HAC); and (5) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). The judge found three statutory mitigating factors (Anthony had no significant history of prior criminal activity; he was an accomplice in the capital felony committed by Jeffery and his participation was relatively minor; he was eighteen years old at the time of the crime) and fifteen nonstatutory mitigating factors (abused and battered childhood, history of emotional problems, cooperation with the police, involvement in Christianity and Bible study courses while in prison, good conduct in prison, remorse for what happened, assertion of a positive influence on others, no history of violence, abandonment by his father, poor upbringing by his mother, lack of education, good employment history, and amenability to rehabilitation). The trial judge concluded that the aggravating factors far outweighed the mitigating factors, and imposed the death penalty.

On appeal after resentencing, this Court vacated Jeffery's death sentence based upon our decision in *Brennan v. State*, 754 So. 2d 1 (Fla. 1999), that the imposition of a death sentence for a crime committed when the defendant was sixteen years of age constitutes cruel or unusual punishment in violation of article I, section 17 of the *Florida Constitution*. *See Farina (Jeffery) v. State*, 763 So. 2d 302, 303 (Fla. 2000).

*Farina v. State*, 801 So. 2d 44, 48-49 (Fla. 2001).

**THE STATE POST-CONVICTION PROCEEDINGS**

The Florida Supreme Court described the post-conviction litigation as follows:

> In April 2003, Anthony filed a rule 3.851 motion for postconviction relief, raising thirteen claims. The circuit court denied relief on all of them. Anthony now appeals the court's order denying relief. He raises six issues, several of which contain additional subparts. He also petitions this Court for a writ of habeas corpus, raising four claims.

*Farina v. State*, 937 So. 2d 612, 617-618 (Fla. 2006).

THE HABEAS CLAIMS IN THE FLORIDA COURTS

The "Christian Bible" claim was litigated in Farina's state habeas petition as an ineffectiveness of appellate counsel claim, and was decided as follows:

> Anthony first argues that appellate counsel failed to claim prosecutorial misconduct during the cross-examination of Davis. Anthony claims that, during his cross-examination of Davis, the prosecutor elicited biblical authority that supported the imposition of the death penalty. [FN9] The relevant portions of the prosecutor's cross-examination are reproduced below:
>
> > [FN9] The dissent goes even further, claiming that the State "mount[ed] a deliberate strategy seeking the imposition of the death penalty based on biblical law," dissenting op. at 640, which began with the voir dire questioning. The dissent quotes from Anthony's habeas petition, where he argues in a footnote that appellate counsel rendered ineffective assistance for failing to raise three additional claims of prosecutorial misconduct based on statements made during the jury selection process that referred to religious authority. *See supra* note 8. Defense counsel never objected to these statements and thus failed to preserve them. They also do not constitute fundamental error. Anthony takes each of the

7

statements out of context. When read as a
whole, the statements are not prejudicial.
Appellate counsel may not be deemed
ineffective for failing to challenge them on
direct appeal. *Hendrix v. State*, 908 So. 2d
412, 426 (Fla. 2005) (*citing Rutherford v.
Moore,* 774 So. 2d 637, 646 (Fla. 2000)).

. . .

**The first issue we must address is whether a claim of
prosecutorial misconduct was preserved for appeal.** To
preserve an issue, "[f]irst, a litigant must make a
timely, contemporaneous objection. Second, the
party must state a legal ground for that objection. Third
... 'it must be the specific contention asserted as
legal ground for the objection ... below.'" *Harrell v.
State*, 894 So. 2d 935, 940 (Fla. 2005) (*quoting
Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982)).
Defense counsel objected to the introduction of the
Bible based on relevance. The dissent claims that this
objection "was clearly valid." Dissenting op. at 640
n. 15. We agree with that contention as far as it
goes. However, the issue Anthony argues before us now
(prosecutorial misconduct) **is not "the specific
contention asserted as legal ground for the objection
... below."** *Harrell,* 894 So. 2d at 940. At trial,
defense counsel never argued that the prosecutor was
engaging in misconduct. **Therefore, it was not
preserved for appeal.**

**Furthermore, the issue also was not preserved because
defense counsel did not obtain a ruling on the motion
at trial.** As we have held, the failure to obtain a
ruling on a motion or objection fails to preserve an
issue for appeal. *Armstrong v. State*, 642 So. 2d 730,
740 (Fla. 1994) (holding that the defendant's pretrial
request for a Magnetic Resonance Imaging (MRI) test
was procedurally barred because the trial judge
reserved ruling on the issue and never issued a
ruling) (*citing Richardson v. State*, 437 So. 2d 1091,
1093 (Fla. 1983)). When defense counsel objected, the
trial court reserved judgment, allowed the prosecutor
to illustrate the relevance of the Bible, and alerted
the defense that it could renew its objection if the
prosecutor's subsequent questioning failed to relieve
its concerns. Defense counsel did not renew his

objection at that time, and the court never ruled.
Therefore, this issue was not preserved.

We have held that "[a]ppellate counsel has no
obligation to raise an issue that was not preserved
for review and is not ineffective for failing to raise
an unpreserved issue on appeal." *Zack v. State*, 911
So. 2d 1190, 1204 (Fla. 2005) (*citing Randolph*, 853
So. 2d at 1068). Anthony failed to preserve this issue
of prosecutorial misconduct. Therefore, appellate
counsel was not ineffective for failing to raise it on
direct appeal.

Nevertheless, Anthony argues that the prosecutor's
conduct was **fundamental error**. "[A]ppellate counsel
may not be deemed ineffective for failing to challenge
an unpreserved issue on direct appeal unless it
resulted in fundamental error." *Hendrix v. State*, 908
So. 2d 412, 426 (Fla. 2005) (*citing Rutherford v.
Moore,* 774 So. 2d 637, 646 (Fla. 2000)).

. . .[2]

In this case, we find that the prosecutor's conduct
was not fundamental error for three reasons: (1)
Davis's earlier testimony; (2) the prosecutor's
freedom on cross-examination; and (3) the prosecutor's
conduct in light of the entire record.

*Farina v. State*  937 So. 2d 612, 626-631 (Fla. 2006). (emphasis

added).

The "real killer's sentence" claim was decided by the

Florida Supreme Court in the following way:

Anthony first claims that Jeffrey's life sentence is
newly discovered evidence that warrants granting him a
new sentencing phase. During resentencing in 1998, a
jury unanimously recommended the death penalty for
Anthony and Jeffrey. We later vacated Jeffrey's death

---

[2] The Florida Supreme Court discussed state-law fundamental error
at length in its decision. While that analysis is correct under
Florida law, it does not come into play in this case, which is
controlled by well-settled procedural default law.

sentence and reduced it to life imprisonment without
the possibility of parole for twenty-five years
because he was 16 years old at the time of the crimes.
*See Farina v. State*, 763 So. 2d 302, 303 (Fla. 2000)
(*citing Brennan v. State*, 754 So. 2d 1 (Fla. 1999)).

The circuit court construed this argument as a
proportionality claim, which we rejected on direct
appeal. *See Farina v. State*, 801 So. 2d 44, 55-56
(Fla. 2001). Thus, any such argument here would be
procedurally barred. *See Turner v. Dugger*, 614 So. 2d
1075, 1078 (Fla. 1993) (barring claims for
postconviction relief "because they, or variations
thereof, were raised on direct appeal").

Nevertheless, Anthony insists that Jeffrey's life
sentence is "newly discovered evidence." To set aside
a conviction based on newly discovered evidence,

> [f]irst ... the evidence "must have been
> unknown by the trial court, by the party, or
> by counsel at the time of trial, and it must
> appear that defendant or his counsel could
> not have known [of it] by the use of
> diligence."
>
> Second, the newly discovered evidence must
> be of such nature that it would probably
> produce an acquittal on retrial.

*Robinson v. State*, 865 So. 2d 1259, 1262 (Fla. 2004)
(citation omitted) (*quoting Jones v. State*, 709 So. 2d
512, 521 (Fla. 1998)). "The two elements of a newly
discovered evidence claim apply equally to the issue
of 'whether a life or death sentence should have been
imposed.'" *Ventura v. State*, 794 So. 2d 553, 571 (Fla.
2001) (*quoting Scott v. Dugger*, 604 So. 2d 465, 468
(Fla. 1992)). Therefore, to succeed on a claim that a
death sentence must be set aside because of a
codefendant's subsequent life sentence the defendant
must show: "1) the life sentence could not have been
known to the parties ... at the time of trial; and 2)
the codefendant's life sentence would probably result
in a life sentence for the defendant on retrial." *Id.*
(*quoting Groover v. State*, 703 So. 2d 1035, 1037 (Fla.
1997)). In *Scott,* we held that a codefendant's
subsequent life sentence constitutes newly discovered

evidence which would permit collateral relief. 604 So. 2d at 468-69. We further held that "in a death case involving equally culpable codefendants the death sentence of one codefendant is subject to collateral review under rule 3.850 when another codefendant subsequently receives a life sentence." *Id*. at 469.

Anthony meets the first prong of the newly discovered evidence test because we reduced Jeffrey's sentence two years after they were sentenced to death. *See Farina*, 763 So. 2d at 303. However, Anthony fails to meet the second prong. Although Jeffrey's life sentence would normally constitute newly discovered evidence under Scott, we reduced his sentence because he was not eligible as a matter of law to receive the death penalty. *See Farina,* 801 So. 2d at 56 (*citing Brennan*, 754 So. 2d at 5-6). Thus, as we stated in Anthony's direct appeal, Jeffrey's life sentence "is irrelevant to Anthony's proportionality review because the aggravation and mitigation in their cases are per se incomparable." *Id*. Jeffrey's life sentence would not "probably result in a life sentence for [Anthony] on retrial." *See Ventura*, 794 So. 2d at 571.

. . .

In this case, Jeffrey's life sentence does not meet this low threshold for relevance. In *Scott*, this Court vacated a codefendant's death sentence and remanded for a new sentencing proceeding before a jury. 604 So. 2d at 468 (*citing Robinson v. State*, 487 So. 2d 1040 (Fla. 1986)). Upon the jury's recommendation, the codefendant was resentenced to life. *Id.* In this case, Jeffrey, too, originally received a death sentence. *Farina,* 763 So. 2d at 303. As the dissent notes, the jury recommended death by a vote of nine to three, and the judge found five aggravating circumstances, including HAC and CCP. *Farina v. State*, 680 So. 2d 392, 394 (Fla. 1996). The reason he did not receive the death penalty, however, had nothing to do with the circumstances of the crime or the presence or absence of aggravating or mitigating factors. The basis was purely legal: we had held in *Brennan,* 754 So. 2d at 1, that the imposition of a sentence of death on a sixteen-year-old defendant constitutes cruel and unusual punishment, and Jeffrey was sixteen years old at the time of these murders. *See Farina,* 763 So. 2d

at 303 (*citing Brennan,* 754 So. 2d at 5-6). Thus, whereas in *Scott,* a jury analyzed the facts and, considering the aggravating and mitigating circumstances, recommended a sentence of life, in this case, despite a jury recommendation of a sentence of death, and the trial court's imposition of such a sentence, this Court concluded as a matter of law that Jeffrey was ineligible for the death penalty. *See id.* Unlike Scott, Jeffrey's sentence reduction has no connection to the nature or circumstances of the crime or to the defendant's character or record. Under *Lockett,* it is irrelevant as a mitigating circumstance in Anthony's case.

We have held that a defendant fails to prove that his codefendant's life sentence would "probably produce" an acquittal or life sentence on retrial when the codefendant was less culpable. *See, e.g., Marquard v. State,* 850 So. 2d 417, 423-24 (Fla. 2002) (affirming the defendant's death sentence even though his codefendant received a life sentence, because the defendant was more culpable); *Ventura,* 794 So. 2d at 571 (denying the defendant's claim because he was the triggerman in the scheme and his codefendant was not equally culpable); *Groover,* 703 So. 2d at 1037 (affirming the denial of the defendant's newly discovered evidence claim because the defendant and codefendant were not equally culpable). In this case, although Jeffrey was the triggerman, the basis for Jeffrey's reduction in sentence hinders Anthony's ability to satisfy the second prong of the test. If Anthony were allowed to introduce Jeffrey's life sentence, the State would be entitled to rebut the relevance of that evidence by showing that the sentence was not the result of a jury recommendation or a trial court's judgment but a matter of law. The evidence is certainly not so strong that it would "probably result in a life sentence" for Anthony. Accordingly, we deny this claim.

*Farina v. State*, 937 So. 2d at 618-620. In his brief (*see, e.g., Initial Brief* at 41), Farina also attempts to bring in additional testimony to support this claim. That evidence was resolved by the Florida courts as follows:

12

At the hearing, trial counsel testified that his
theory for Anthony's defense stressed that Anthony was
not the active participant in the crimes: "He was not
the one who fired the fatal shot .... and ... was not
the one who wielded the knife." The testimonies of
these witnesses, he argues, are newly discovered
evidence proving that Jeffrey was the leader and the
more violent and aggressive of the two brothers. The
witnesses in question are Jeffrey, Susan Griffith
(Anthony and Jeffrey's mother), Katrina Bergeny
(Anthony and Jeffrey's sister), and Dr. Clifford Levin
(a psychologist who evaluated Anthony).

. . .

Anthony argues that the circuit court erred in
discrediting these testimonies. We disagree. The
relevant standards are the requirements for newly
discovered evidence. *See Robinson*, 865 So. 2d at 1262
("First ... the evidence 'must have been unknown ...
at the time of trial....' Second, the ... evidence
must be of such nature that it would probably produce
an acquittal on retrial.") (citation omitted). In
addition, "the trial court is required to 'consider
all newly discovered evidence which would be
admissible' at trial and then evaluate the 'weight of
both the newly discovered evidence and the evidence
which was introduced at the trial.'" *Id.* (emphasis
added) (*quoting Jones*, 709 So. 2d at 521). When
reviewing a court's application of the above law to a
rule 3.850 motion following an evidentiary hearing, we
apply the following standard of review: "As long as
the trial court's findings are supported by competent
substantial evidence, [we] will not substitute [our]
judgment ... on questions of fact, likewise of the
credibility of the witnesses...." *Blanco v. State*, 702
So.2d 1250, 1252 (Fla. 1997) (citation and internal
quotation marks omitted).

**In denying relief, the circuit court found the
testimonies of Jeffrey, Griffith, Bergeny, and Dr.
Levin to be "incredible"** because they contradicted the
testimonies of the three surviving victims at
resentencing. The victims in question were Derek
Mason, Kimberly Gordon, and Gary Robinson. Mason
testified that, once Anthony and Jeffrey brought them
inside the restaurant, "Anthony said, go inside and

get the manager." He also stated that Anthony offered
to let them smoke and directed those who were not
smoking to stand so that their hands could be tied.
Mason said that "Anthony pretty much told Jeffrey what
to do." Gordon, the manager on duty, testified that,
when she saw Anthony and Jeffrey holding Mason and Van
Ness, Anthony ordered them to the back of the
restaurant. Anthony then told her that he knew she had
the keys to the safe and ordered her to go to the
front of the restaurant with him to get the money.
Like Mason, Gordon also stated that Anthony offered to
let them smoke and directed those who were not smoking
to go with him. When asked who did most of the
talking, Gordon replied, "Anthony was doing-I never
heard Jeffrey talk." To her, "[i]t appeared that
Anthony was in charge .... [b]ecause he did all of the
talking." She added that Anthony directed them into
the freezer. Robinson also stated that Anthony led
them into the freezer. When asked who he thought was
in charge, Robinson replied, "Anthony was doing most
of the talking."

Given this testimony at resentencing, the trial court
found as follows:

> **[T]he Court finds the exculpatory evidence
> ... to be incredible. The defendant's
> brother has clear motive to fabricate or
> exaggerate now that he no longer faces the
> death penalty.** On the other hand, if there
> was any reason for the victims [at
> resentencing] to contrive their testimony to
> prejudice one brother over the other, it
> would be contrived against Jeffrey.... Yet
> **the victims testified without exception that
> it was the defendant who was in charge.**
>
> After weighing all the evidence, the Court
> finds that there is no probability that the
> defendant would receive a recommendation of
> life from a jury upon retrial.

The record shows that the circuit court properly
applied the above law. Competent, substantial evidence
supports its findings. Consequently, we cannot
substitute our judgment for that of the court on this
matter. We find no error.

14

*Farina v. State*, 937 So. 2d at 620-623. (emphasis added).

The *Batson* claim was raised on direct appeal from resentencing, and rejected by the Florida Supreme Court:

> In issue one Anthony claims that the State improperly used peremptory challenges to exclude two African-American jurors (Edwards and Hilton) and that the court failed in its duty to critically examine these challenges. Under *Melbourne v. State*, 679 So. 2d 759 (Fla. 1996), and its progeny, the following procedure must be followed for challenging peremptory strikes of prospective jurors: (1) the objecting party must make a timely objection, must show that the venire person is a member of a distinct racial group, and must request that the court ask the striking party the reasons for the strike; (2) if the first step is met, the court must ask the proponent of the strike to explain the reason for the strike; and (3) if the reason given is facially race-neutral and the court believes that given all the circumstances surrounding the strike, the explanation is not pretext, the strike will be sustained. *Id.* at 764. In the third step, the court's focus is on the genuineness of the explanation, not its reasonableness. *See id.* On appeal, reviewing courts must be mindful of two guiding principles: peremptory challenges are presumed to be exercised in a nondiscriminatory manner; and the trial court's decision, which turns primarily on an assessment of credibility, will be affirmed on appeal unless clearly erroneous. *See id.; Rodriguez v. State*, 753 So. 2d 29, 40 (Fla. 2000), *cert. denied*, 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000).
>
> In the instant case, the State peremptorily struck juror Edwards on two grounds: that she expressed concern over her son's guilt for a drug conviction; and that she voiced hesitancy about the death penalty. The trial judge ruled that "prosecutors very frequently challenge jurors for those types of reasons. So I find it to be a race-neutral reason that is very common in our system for challenging jurors." The State peremptorily struck juror Hilton on the grounds that she had been thirty minutes late in arriving for voir dire on the previous day, was

15

tentative in her support of the death penalty, was a
member of a church that was involved in a prison
ministry program, and might allow feelings of
Christian forgiveness to creep into her decision. The
trial judge ruled that he was "supposed to just
sustain the challenge if I find that the attorney
making it is making it in his or her world of good
faith, not whether I agree with it or not. And I don't
think that [the prosecutor] is making a racial-based
challenge ... And I don't think [the prosecutor] is
lying to me." Based upon our review of the voir dire
record and the fact that the court's rulings turned on
an assessment of the genuineness of the State's
reasons for striking these two prospective jurors, we
conclude that the trial court's ruling was not clearly
erroneous and Anthony is not entitled to relief on
this claim.

*Farina v. State*, 801 So. 2d at 49-50.

THE DISTRICT COURT ORDER[3]

The District Court denied habeas relief on the "Christian
Bible" claim (Claim 17) on procedural default grounds --
Farina's claim in that proceeding was that appellate counsel was
ineffective for not raising that claim on direct appeal. *Farina
v. Secretary, Dept. of Corrections*, 2012 WL 1016723, 49 (M.D.
Fla. Mar. 26, 2012).

The District Court found that the "newly discovered
evidence" of the co-defendant's sentence (Claim 14) was not a
basis for relief because the Florida Supreme Court had not
unreasonably applied clearly established federal law in denying
relief on that claim:

---

[3] The pertinent parts of the order are set out in detail in the
argument section of this brief.

Furthermore, the Court notes that it has not found, nor has Petitioner cited to, any cases in which the Supreme Court of the United States has held that a new penalty phase was warranted because the jury was entitled to hear evidence that a more culpable defendant received a life sentence as a matter of law due to his age at the time of the crime. The Supreme Court has rejected arguments that the Eighth Amendment requires proportionality between codefendants' sentences. *McCleskey v. Kemp*, 481 U.S. 279, 306-07, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Petitioner has not demonstrated that the state court's determination was contrary to, or resulted in an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, this portion of claim fourteen is denied pursuant to § 2254(d).

*Farina v. Secretary, Dept. of Corrections*, 2012 WL 1016723, 36 (M.D. Fla. Mar. 26, 2012).

The District Court denied relief on the *Batson v. Kentucky* claim (Claim 6), stating:

Petitioner has not demonstrated that the State engaged in purposeful discrimination in this case. The state court's rejection of this claim was neither contrary to, or an unreasonable application of, clearly established federal law. As such, claim six is denied pursuant to § 2254(d).

*Farina v. Secretary, Dept. of Corrections,* 2012 WL 1016723, 16-17 (M.D. Fla. Mar. 26, 2012).

## STANDARD OF REVIEW

The standard of review that applies to this appeal is as follows:

We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed,

"a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*). [FN1]

> [FN1] The dissent correctly points out that AEDPA itself "never uses the term 'deference.'" *Post,* at ---- (opinion of Stevens, J.). But our cases have done so over and over again to describe the effect of the threshold restrictions in 28 U.S.C. § 2254(d) on granting federal habeas relief to state prisoners. *See, e.g., Wellons v. Hall*, 558 U.S. ----, ----, n. 3, 130 S.Ct. 727, 731 n. 3, --- L.Ed.2d ---- (2010) (*per curiam*); *Smith v. Spisak*, 558 U.S. ----, ----, 130 S.Ct. 676, 681, --- L.Ed.2d ---- (2010); *McDaniel v. Brown*, 558 U.S. ----, ----, 130 S.Ct. 665, 673, --- L.Ed.2d ---- (2010) (*per curiam*); *Cone v. Bell*, 556 U.S. ----, ----, 129 S.Ct. 1769, 1778, 1784, 173 L.Ed.2d 701 (2009); *Knowles v. Mirzayance*, 556 U.S. ----, ---- n. 2, 129 S.Ct. 1411, 1419 n. 2, 173 L.Ed.2d 251 (2009); *Waddington v. Sarausad*, 555 U.S. ----, ----, 129 S.Ct. 823, 833, 172 L.Ed.2d 532 (2009).

*Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010).

*Accord, Powell v. Allen*, 602 F.3d 1263 (11th Cir. 2010);

*Fotopoulos v. Secretary, Dept. of Corrections*, 516 F.3d 1229, 1232 (11th Cir. 2008); *Crowe v. Hall*, 490 F.3d 840, 844 (11th

Cir. 2007); *Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006); *Marquard v. Sec'y for the Dep't of Corr.*, 429 F.3d 1278, 1303 (11th Cir. 2005); *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1141 (11th Cir. 2005); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir.2001) *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000).

For AEDPA purposes, the law is well-settled that,

in determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411, 120 S.Ct. 1495; *accord Harrington v. Richter,* --- U.S. ----, 131 S.Ct. 770, 786-87, --- L.Ed.2d ---- (2011) (**"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.**"). Regarding the "unreasonable determination" prong, this Court has explained that "[u]nder AEDPA, we accord a presumption of correctness to a state court's factual findings." *Mason*, 605 F.3d at 1118-19. Additionally, the Supreme Court has explained the treatment of state court fact finding as follows:

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding, §

19

2254(d)(2)*; see also Williams* [*v. Taylor*,]
529 U.S. [362,] 399, 120 S.Ct. 1495, 146
L.Ed.2d 389 [(2000)] (opinion of O'CONNOR,
J.).

... [This] deference does not[, however,]
imply abandonment or abdication of judicial
review. Deference does not by definition
preclude relief. A federal court can
disagree with a state court[ ] ... and, when
guided by AEDPA, conclude the decision was
unreasonable ... [because] the factual
premise was incorrect by clear and
convincing evidence.

*Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct.
1029, 154 L.Ed.2d 931 (2003).

*Gill v. Mecusker*, 633 F.3d 1272, 1287-1288 (11th Cir. 2011).

(emphasis added).

This Court has described the standard:

Recently, the Supreme Court has reiterated the
deferential nature of our review under AEDPA in a
situation analogous to Borden's: "A state court's
determination that a claim lacks merit precludes
federal habeas relief so long as 'fairminded jurists
could disagree' on the correctness of the state
court's decision." *Harrington*, 131 S.Ct. at 786
(*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664,
124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004)). Indeed,
"[e]stablishing that a state court's application of
*Strickland* was unreasonable under § 2254(d) is all the
more difficult. The standards created by *Strickland*
and § 2254(d) are both highly deferential, and when
the two apply in tandem, review is doubly so." *Id*. at
788 (citations omitted) (internal quotation marks
omitted). [FN41]

[FN41] Moreover, it matters not for our
analysis whether the Court of Criminal
Appeals resolved Borden's claim under
Strickland or under a state rule. *See Early
v. Packer*, 537 U.S. 3, 123 S.Ct. 362, 154
L.Ed.2d 263 (2002). Compliance with the

> "contrary to" language of AEDPA "does not
> require citation of the [Supreme Court's]
> cases—indeed, it does not even require
> awareness of [those] cases, so long as
> neither the reasoning nor the result of the
> state-court decision contradicts them." *Id.*
> at 8, 123 S.Ct. at 365.

*Borden v. Allen*, 646 F.3d 785, 817 (11th Cir. 2011). Of course,
"a district court evaluating a habeas petition under § 2254(d)
should 'survey the legal landscape' at the time the state court
adjudicated the petitioner's claim to determine the applicable
Supreme Court authority; the law is 'clearly established' if
Supreme Court precedent would have compelled a particular result
in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir.
1998), *overruled on other grounds by Parker v. Head*, 244 F.3d
813, 835 (11th Cir. 2001).

Whether or not the State court's resolution of a claim is
an "unreasonable" application of federal law is, by definition,
a case-specific determination. *Williams, supra.*

**SUMMARY OF THE ARGUMENT**

The Florida Supreme Court's denial of relief on the
ineffectiveness of appellate counsel claim is neither contrary
to, nor an unreasonable application of, clearly established
federal law.

The "co-defendant's sentence" claim is no more than a
proportionality claim that is not cognizable in a habeas

21

proceeding. Clearly established federal law forecloses review. To the extent that the "dominion and control" sub-claim is cognizable, it is disposed of by the credibility determinations of the Florida courts, which are entitled to deference.

The denial of relief on the *Batson* claim is not contrary to, or an unreasonable application of, clearly established federal law. The credibility findings of the Florida courts are entitled to deference.

**ARGUMENT**

**I. THE "PROSECUTORIAL ARGUMENT" CLAIM**

On pages 21-38 of his brief, Farina argues that the "prosecutor's injection of religion into the proceedings" was an issue that appellate counsel should have raised on direct appeal of Farina's death sentence. This issue is not so complex as the *Initial Brief* and the Order suggest. To establish a basis for relief, Farina must establish that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471 (1986). He has never made that claim, and cannot raise it for the first time now.[4]

The Florida Supreme Court held that the substantive claim of prosecutorial misconduct was procedurally barred because it

---

[4] This case is the opposite of *Hammond*, which raised due process claims, but not ineffectiveness claims. *Hammond v. Hall*, 586 F.3d 1289, 1323 (11th Cir. 2009).

was not objected to at trial and because trial counsel did not obtain a ruling on the objection. *See* pages 7-8. Under Florida law, appellate counsel cannot be ineffective for "failing" to raise an unpreserved issue unless the claim rises to the level of "fundamental error" under Florida law. The Florida Supreme Court found that

> the prosecutor's conduct was not fundamental error for three reasons: (1) Davis's earlier testimony; (2) the prosecutor's freedom on cross-examination; and (3) the prosecutor's conduct in light of the entire record,

discussed each of those factors at length, and concluded that appellate counsel was not ineffective. *Farina v. State*, 937 So.2d at 631-34. Those findings are not contrary to, or an unreasonable application of, any clearly established federal law, and are entitled to deference.[5] Alternatively, the Florida Supreme Court held:

> Even assuming the error was fundamental, we have held that "appellate counsel is not necessarily ineffective for failing to raise a claim that might have had some possibility of success; effective appellate counsel need not raise every conceivable nonfrivolous issue." *Valle v. Moore*, 837 So. 2d 905, 908 (Fla. 2002) (*citing Jones v. Barnes*, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and *Provenzano v. Dugger*, 561 So. 2d 541, 549 (Fla.1990)). In this case, appellate counsel's brief was 96 pages long and raised ten issues. [footnote omitted] He also filed a supplemental brief raising two claims related to the appropriateness of his death sentence after Jeffrey had been sentenced to life imprisonment. *Farina*, 801 So. 2d at 49. Appellate counsel could have reasonably

---

[5] *Romine*, discussed *infra*, is not "controlling" for AEDPA purposes. *See* pages 26-27.

concluded that these issues represented his strongest arguments. He could have reasoned that the prosecutor's alleged misconduct, given that it was not properly objected to, was a weaker claim with less chance of success. Thus, counsel was not ineffective for failing to raise it on appeal. Accordingly, we deny relief.

*Farina v. State,* 937 So. 2d at 634. To the extent that the "fundamental-error-based" ineffectiveness claim is before this Court, this ruling by the Florida Supreme Court is not contrary to, or an unreasonable application of, clearly established federal law. To the contrary, *Jones v. Barnes*, 463 U.S. 745, 751-53, 103 S.Ct. 3308 (1983), is the AEDPA-relevant case, and the Florida Supreme Court followed it.[6] Farina presents no argument to the contrary.

Farina's claim fails under the precedent of this Court. In *Shere*, this Court decided a virtually identical appellate ineffectiveness claim (and relied in part on the Florida Supreme Court's disposition of Farina's case in doing so):[7]

**Indeed, there is nothing inherently problematic with a prosecutor's asking religious questions while cross-**

---

[6] As Judge Edmonson said, "[t]he Supreme Court -- as today's court recognizes -- has never required counsel to raise every nonfrivolous argument to be effective. *See Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986)." *Heath v. Jones*, 941 F.2d 1126, 1141 (11th Cir. 1991). (Edmonson, J., concurring).

[7] On page 38 of his brief, Farina says that objections were made at the time of trial in Shere's case. That explains why *Shere* decided the ineffectiveness claims instead of ruling on a procedural default. Farina, on the other hand, defaulted his claims at trial.

**examining defense witnesses who were put on the stand to testify about a capital defendant's religion, so long as the cross-examination does not exceed the scope of the religious subject matter explored on direct. Shere injected religion into the proceedings when he called witnesses to establish a mitigation defense based in part on religion, and he asked them fairly searching questions aimed at highlighting his religious beliefs and practices.** Because the subject of religion was broadly addressed during direct examination, it was within the province of the prosecutor's authority to test that defense through cross-examination. In doing so, the prosecutor did not exceed the scope of the religious testimony with his questions; therefore, the prosecutor's Biblical references were valid cross-examination. Shere's appellate counsel did not have a meritorious issue to raise on appeal, so his failure to address the issue did not constitute deficient performance. *Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir. 2001) (noting appellate counsel is not ineffective for failing to raise a meritless issue on appeal). Thus, Shere's ineffective assistance of appellate counsel claim is without merit. [FN2]

> [FN2] We also note Shere's trial counsel did not preserve a claim for appeal with regard to the Biblical references, and under almost identical facts to those before us, the Florida Supreme Court has held a prosecutor's Biblical questioning during cross-examination is not fundamental error. *See Farina v. State*, 937 So. 2d 612, 632 (Fla. 2006).

In summary, Shere would not be entitled to habeas relief even if his claim were properly framed in terms of AEDPA. The Florida Supreme Court's denial of his ineffective assistance of appellate counsel claim is neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court law. Shere's reliance on *Romine* is misplaced, since under AEDPA our review of his habeas claim is limited to examining United States Supreme Court cases. Even if that were not the case, the prosecutor's Biblical references were within the scope of valid cross-examination under *Romine*, and thus Shere's appellate

counsel did not perform deficiently in failing to challenge them on appeal.

*Shere v. Secretary, Florida Dept. of Corrections*, 537 F.3d 1304, 1311-1312 (11th Cir. 2008). (emphasis added). Farina cannot establish a basis for relief under the AEDPA (even ignoring the double default of his claim) because there is no "clearly established federal law" for the decision of the Florida Supreme Court to be contrary to in the first place. *Romine* does not qualify, and Farina has not identified any United States Supreme Court precedent that supports his claim for relief.

The appellate ineffectiveness claim can be disposed of without going beyond the Florida Supreme Court findings which are sufficient, under AEDPA, for resolution of this claim. However, the District Court went further, and held:

> The Supreme Court of Florida stated that to the extent Petitioner failed to raise specific objectionable errors to the prosecutor's improper comments during voir dire and the penalty phase, the claim was procedurally barred. *Farina III*, 937 So. 2d at 625 n. 8. The court addressed Petitioner's claim that appellate counsel should have raised the prosecutor's improper discussion of the Bible with defense witness Davis on the merits. *Id*. at 626. The court found that trial counsel failed to object to and obtain a ruling on the allegedly improper discussion that occurred during defense witness Davis' cross-examination. *Id*. at 628-29. The court concluded that this claim was not preserved for appeal. *Id*. The court further held that the prosecutor's conduct did not amount to fundamental error. *Id*. at 629-34.

(RE 71, pp. 86-87). The Court concluded:

26

> Petitioner's first portion of this claim, regarding appellate counsel's failure to argue on appeal that the prosecutor engaged in improper discussion of the Bible during *voir dire* and with victim impact witnesses, **was found to be conclusory by the state court**. Petitioner did not cite to any portions of the record or instances of improper argument in his state habeas petition in order to support his claims (Ex. P). **Thus, the state court's determination was essentially that the petition was facially insufficient. A state court finding of facial insufficiency constitutes an adequate and independent state ground precluding consideration of the claim.**
>
> . . .
> Petitioner has not shown either cause or prejudice that would excuse the default, nor has he shown the applicability of the actual innocence exception.
>
> With respect to Petitioner's claim that appellate counsel was ineffective for failing to argue on appeal the prosecutor engaged in improper discussion with witness Davis during cross-examination, the Court finds that Petitioner is not entitled to relief.

(RE 71, pp. 87-89). Habeas law is settled beyond dispute that the Federal courts will honor and enforce the State courts' procedural rules and procedural rulings. *See, e.g., Lindsey v. Smith*, 820 F.2d 1137 (11th Cir. 1987); *Sochor v. Florida*, 504 U.S. 527, 534, 112 S.Ct. 2114, 2120 (1992). With respect to the witness Davis component, the District Court found that that claim had had not been preserved at trial, **and** that there was no "fundamental error" under Florida law. (RE 71, p. 98).

In order to avoid his default, Farina must demonstrate not only "cause" for that default, but also resulting prejudice. He has never attempted to establish cause (or prejudice for that

matter), and, for that reason, evaluation of this claim can end at this point:

> If Doorbal cannot prove cause and prejudice, "he ... must show that but for constitutional error at his sentencing hearing, no reasonable juror could have found him **eligible** for the death penalty under [state] law." *Baldwin v. Johnson*, 152 F.3d 1304, 1319 (11th Cir. 1998) (internal quotation marks omitted). **Doorbal has failed to allege cause and prejudice or actual innocence that would excuse the procedural default of his claim of ineffective assistance of counsel, and "[h]e is therefore barred from raising it now."** *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006).

*Doorbal v. Department of Corrections*, 572 F.3d 1222, 1229 (11th Cir. 2009). (emphasis added). *Doorbal* controls here -- there is no basis for excusing the procedural defaults, and there is no basis for relief.

To the extent that Farina says that Florida's procedural default rule is not "adequate and independent," that the Florida Supreme Court's alternative merits ruling removed the procedural bar, and that Florida's procedural rule is not "firmly established and regularly followed," this Court has already explicitly rejected those claims. In *Torres*, this Court resolved that litany of claims in one place. *Torres v. Secretary, Department of Corrections*, 336 Fed. Appx. 924, 926-928 (11th Cir. 2009). *Torres* leaves no doubt that no relief is available to Farina.

Farina says that this Court's *Romine* decision controls and entitles him to relief. That is incorrect for the not

insignificant reasons that there was no procedural default in *Romine*, and that that case is not AEDPA-controlling precedent. This Court said, explicitly, that "[t]he federal district court noted that Romine had failed to preserve the closing argument issue at trial, but held that there was no procedural **bar because the Georgia Supreme Court had decided it on the merits**." *Romine v. Head*, 253 F.3d 1349, 1364 (11th Cir. 2001). (emphasis added). No further discussion of *Romine* is necessary because it is distinguishable on its face. In any event, "*Romine*, an Eleventh Circuit case, cannot form the basis of habeas relief under AEDPA." *Shere v. Secretary, Florida Dept. of Corrections*, 537 F.3d 1304, 1310 (11th Cir. 2008).

Finally, without waiving any of the foregoing arguments, and assuming that Florida "fundamental error" review is even properly evaluated by the habeas court (in the absence of a due process claim), the District Court's ultimate conclusion is correct:

> The Court finds this case is more akin to *Shere* and concludes that there is nothing inherently **problematic with the prosecutor's questioning of Davis when Petitioner made religion and his religious beliefs an issue by calling this witness.** Because the prosecutor's questioning on cross-examination did not amount to error, the Court finds that there is not a reasonable probability that but for the prosecutor's remarks that the outcome of the penalty phase proceeding would have been different or that the remarks had a substantial and injurious effect on the jury. *Brecht v. v. Abrahamson*, 507 U.S. 619, 622, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Petitioner has not

demonstrated that fundamental error occurred with
respect to this claim. Therefore, appellate counsel
did not act deficiently in failing to raise this claim
on direct appeal. The state court's determination of
this claim was not contrary to, or an unreasonable
application of, clearly established federal law. As
such, the instant claim is denied pursuant to §
2254(d).

(RE 71, p. 98). The denial of relief should be affirmed in all
respects.

## II. THE CO-DEFENDANT'S SENTENCE CLAIM

On pages 38-47 of his brief, Farina argues that the
reduction of his 17-year-old co-defendant's sentence to life
based on *Brennan v. State*, 754 So. 2d 1 (Fla. 1999) entitles him
to a life sentence as well.[8] As a sub-part of this argument,
Farina says that testimony about the co-defendant's "domination"
of him also requires relief. The life sentence imposed on the
co-defendant was litigated on direct appeal to the Florida
Supreme Court (as a proportionality claim), and again on appeal
from the denial of post-conviction relief (as a "newly
discovered evidence" claim). When this claim is stripped of its
constitutional pretensions, the fact remains that the claim
before the Florida Supreme Court was a proportionality claim.
Because "proportionality" is not a claim that is cognizable in

---

[8] No federal law, clearly established or otherwise, requires a
re-sentencing proceeding simply because a co-defendant
subsequently receives a sentence less than death, especially
when that less-than-death sentence is based completely on
factors (such as age) that have no relationship to any aspect of
the crime or the defendant's culpability.

habeas, the State court decision cannot be contrary to, or an unreasonable application of, clearly established federal law -- there is no federal law to "control" for AEDPA purposes. In an attempt to avoid that result, Farina says that *Lockett v. Ohio* supplies the "clearly established federal law" he must locate if he is to have any chance of success.

According to Farina, *Lockett* somehow opens the door to allow the habeas court to consider his proportionality claim. How a *Lockett* claim can be based on evidence that did not exist at the time of trial is something Farina does not explain. That argument does, however, not satisfy the clearly established federal law requirement of the AEDPA. To the extent that *Lockett* has anything to do with this case, the District Court rejected that claim:

> Additionally, the Supreme Court of the United States in *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) concluded "that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (footnote omitted). **The newly discovered evidence at issue in this case is not related to any aspect of Petitioner's character or record nor is it related to the circumstances of the offense.** Petitioner argues that in a capital case a defendant has "a virtually unrestricted right to present any circumstance to a jury for consideration as a reason to spare his life" The Supreme Court of the United States, however, has not held that a criminal defendant is completely unrestricted in presenting evidence during the penalty

31

> phase of a capital murder case. Instead, the Court has
> held that a criminal defendant must meet a "low
> threshold for relevance, which is satisfied by
> evidence which tends logically to prove or disprove
> some fact or circumstance which a fact-finder could
> reasonably deem to have mitigating value." *Smith v.*
> *Texas*, 543 U.S. 37, 44, 125 S.Ct. 400, 160 L.Ed.2d 303
> (2004) (quotation omitted); *Eddings v. Oklahoma*, 455
> U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)
> (holding a "sentencer in capital cases must be
> permitted to consider any relevant mitigating factor"
> that takes into account the circumstances of the
> offense together with the character and propensities
> of the offender).

(RE71, pp. 70-71). *Lockett* is inapplicable here -- the

sentencing jury was not "precluded" from considering anything,

which is the underpinning of *Lockett* (and of *Hitchcock v.*

*Dugger*, 481 U.S. 393, 107 S.Ct. 1821 (1987)). Those cases, and

the other cases cited in Farina's brief, have nothing at all to

do with newly discovered evidence, nor do those cases create a

gateway through which a proportionality claim is reviewable in a

federal habeas proceeding. There is simply no federal claim

available to Farina, and, because that is so, there is no

federal law for the State court decision to the "contrary to."

On direct appeal, the Florida Supreme Court resolved this

claim, which was expressly one of proportionality, as follows:

> Under *Brennan*, when a defendant is sixteen years of
> age, his or her youth is such a substantial mitigating
> factor that it cannot be outweighed by any set of
> aggravating circumstances as a matter of law. **In this**
> **context, then, Jeffery's less severe sentence is**
> **irrelevant to Anthony's proportionality review because**
> **the aggravation and mitigation in their cases are per**
> **se incomparable**. Under *Brennan*, death was never a

> valid punishment option for Jeffery, and Anthony's death sentence is not **disproportionate** to the sentence received by his codefendant. *See Henyard v. State*, 689 So. 2d 239, 254-55 (Fla. 1996) (concluding that defendant's death sentence was not disproportionate to fourteen-year-old codefendant's life sentence); *cf. Larzelere v. State,* 676 So. 2d 394 (Fla. 1996) (holding that codefendant's acquittal was irrelevant to proportionality review of defendant's death sentence because codefendant was exonerated from culpability as a matter of law). Thus, we conclude that Anthony's death sentence is not disparate when compared with Jeffery's life sentence and find no merit to issues eleven and twelve.

*Farina v. State*, 801 So. 2d 44, 56 (Fla. 2001). (emphasis added).

In his appeal to the Florida Supreme Court from the denial of his post-conviction relief motion, Farina argued that the life sentence was "newly discovered evidence" under Florida law -- that "newly discovered evidence" was, according to Farina, pertinent to the **proportionality of his death sentence.** (AA, Exh. M, pp. 20-45). The Florida Supreme Court again denied relief on the proportionality claim, this time on procedural bar grounds:

> Anthony first claims that Jeffrey's life sentence is newly discovered evidence that warrants granting him a new sentencing phase. During resentencing in 1998, a jury unanimously recommended the death penalty for Anthony and Jeffrey. We later vacated Jeffrey's death sentence and reduced it to life imprisonment without the possibility of parole for twenty-five years because he was 16 years old at the time of the crimes. *See Farina v. State*, 763 So. 2d 302, 303 (Fla. 2000) (*citing Brennan v. State*, 754 So. 2d 1 (Fla. 1999)).

33

**The circuit court construed this argument as a proportionality claim, which we rejected on direct appeal.** *See Farina v. State*, 801 So. 2d 44, 55-56 (Fla. 2001). Thus, any such argument here would be **procedurally barred.** *See Turner v. Dugger*, 614 So. 2d 1075, 1078 (Fla. 1993) (barring claims for postconviction relief "because they, or variations thereof, were raised on direct appeal").

*Farina v. State*, 937 So. 2d 612, 618 (Fla. 2006). (emphasis added). In neither State proceeding did Farina argue the proportionality/newly discovered evidence claim as a federal constitutional claim. And, in the habeas context, the Florida courts' disposition of the proportionality claim makes little difference because proportionality is not a claim that is cognizable in a habeas petition. *Pulley v. Harris*, 465 U.S. 37 (1984). While the District Court's denial of relief is correct, that Court could properly have denied relief on this claim finding that it did not state a federal constitutional claim in the first place. While the Florida Supreme Court also discussed the newly discovered evidence component in its decision, under Florida law, the "newly discovered evidence" is evidence going to the State law proportionality analysis. *Scott v. Dugger*, 604 So. 2d 465, 468 (Fla. 1992). It does not state a cognizable claim.

THE DISTRICT COURT ORDER[9]

---

[9] The Court's discussion of Claim XIV is somewhat inconsistent with its rejection of Claim XII, which was a stand-alone proportionality claim. There, the Court said:

Farina'S claim that he is entitled to relief of some sort because his co-defendant's death sentence was reduced to life as a matter of law because of his age claim does not state a claim of federal constitutional error -- at most, **as framed by the District Court, this is a proportionality claim**. And, regardless of any other aspect of the claim, **there is no clearly established federal law that supports granting relief, as there must be under AEDPA.** The District Court denied relief on this claim:

> Petitioner alleges that newly discovered evidence warrants a new penalty phase. Specifically, Petitioner states that Jeffrey, who was "the actual killer," received a life sentence. Petitioner maintains that had the jury known that the person who was more culpable received a life sentence instead of a death sentence, they would have sentenced him to life in prison as well. Petitioner raised this claim in his Rule 3.851 motion. The trial court held an evidentiary hearing on this claim and then denied the claim on the merits, noting that Petitioner's more severe sentence was not disproportionate[10] because Jeffrey's life sentence was based on his age, which is a matter of

---

> Even if the instant claim were not procedurally barred, this Court cannot grant Petitioner relief on the merits of his claim. **The Supreme Court of the United States has held that proportionality review is not required by the U.S. Constitution.** *See Pulley v. Harris,* 465 U.S. 37, 43-44, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

(RE 71, pp. 57-58). (emphasis added).

[10] The Florida trial court denied relief on procedural bar grounds with respect to the pure proportionality claim. (RE E, p. 4).

law, and not on aggravating and mitigating circumstances.

On appeal, the Supreme Court of Florida affirmed the lower court's denial of this claim. *Farina III*, 937 So. 2d at 618-20. The court found that Petitioner could not meet the test for newly discovered evidence. *Id*. at 619. The court stated that while this claim was raised within two years of discovering it, there is **no reasonable probability that this evidence would produce an acquittal or life sentence because Jeffrey received a life sentence as a matter of law due to his age and not due to the lack of aggravating circumstances**. *Id*. at 619-20.

The Court finds that the state court's denial of this claim is objectively reasonable. . . .

However, Petitioner cannot establish that this newly discovered evidence would probably result in a life sentence if a new penalty phase was granted. The Supreme Court of Florida has held that "the death penalty is **disproportionate** where a less culpable defendant receives death and a more culpable defendant receives life" *Jennings v. State*, 718 So. 2d 144, 153 (Fla. 1998) (*citing Hazen v. State*, 700 So.2d 1207, 1211-14 (Fla. 1997)).

(RE 71, pp. 66-68) (emphasis added). As the order demonstrates, the District Court decided a proportionality claim. That Court went farther than necessary in deciding this claim -- it should have been dismissed for failure to state a cognizable claim, and because the State court decision was not contrary to, or an unreasonable application of, clearly established federal law.

THE "DOMINION AND CONTROL" SUB-CLAIM

Assuming this sub-claim is cognizable in habeas, the "dominion and control" sub-claim (which is also under the rubric of newly discovered evidence) turns wholly on the credibility

36

determinations made by the State court. The District Court described the post-conviction hearing testimony in the following way:

> On cross-examination Hathaway [trial defense counsel] affirmed that Petitioner was not forced to participate in the robbery and had in fact planned the robbery. *Id*. at 40.
>
> . . .
>
> Jeffrey [Farina, the co-defendant] testified that he and Petitioner did not have a defined older brother-younger brother relationship. *Id*. at 75. Petitioner did not tell Jeffrey what to do. *Id*. Jeffrey stated that depending on the situation, either of them would make decisions. *Id*. at 75-76. Jeffrey stated that he helped Petitioner find a job at Park's Seafood, where he worked. *Id*. at 77. Jeffrey also noted that if Petitioner had trouble or problems, he would talk to Jeffrey and Jeffrey would help him solve his problems. *Id*. **Jeffrey testified that he did not remember how he became involved in Petitioner's plan to commit the robbery but did remember that they did not have defined roles**. *Id.* at 83. Jeffrey stated that while they waited outside of the Taco Bell restaurant until closing time, Petitioner had indicated that he thought they should leave because they had no way to enter the building. *Id*. at 84. Jeffrey testified that he told Petitioner that they "came all this way" and he was not turning back without getting "anything" to show for it. *Id*. at 84-85.
>
> Jeffrey testified that at that point in the crime, he felt he was in charge. *Id*. at 85. Jeffrey stated that Petitioner did most of the "talking" inside the Taco Bell because he knew the people and knew where the money was located. *Id*. at 85-86. Jeffrey testified that it was his decision to shoot the employees after Petitioner told him that the employees could identify him (Petitioner). *Id*. at 88. Jeffrey testified that even if Petitioner had wanted to stop him from shooting the employees, he would not have been able to do so*. Id*. Jeffrey also testified that Petitioner was behind him while he shot the employees in the freezer.

*Id.* at 90. Moreover, Jeffrey stated that Petitioner never touched Gordon while he stabbed Gordon in the back of the head and back. *Id.* Jeffrey testified that when they left the Taco Bell, it was his decision to dispose of the rope, gloves, gun, and knife in the dumpster behind Park's Seafood. *Id.* at 91.

Jeffrey further testified that Petitioner's statement while they were seated in the police car that they should have "sliced" the victims' throats was not consistent with Petitioner's personality. *Id.* at 93. Jeffrey admitted he was very violent at that time. *Id.* at 95. Additionally, Jeffrey stated that Petitioner was not the "mastermind" behind the crime. *Id.* On cross-examination Jeffrey testified that although he wants to help his brother, he will not lie for him. *Id.* at 97. Jeffrey admitted that Petitioner never told him not to shoot the employees. *Id.* at 103. Moreover, Jeffrey testified they never intended to shoot anyone and had brought a gun and purchased bullets in anticipation of needing the weapon for self-defense. *Id.* at 105.

Testimony of Dr. Clifford Levin ("Dr. Levin"), the psychologist who evaluated Petitioner, was also presented at the hearing. *Id.* at 121. Dr. Levin opined that Petitioner suffered from dependant personality disorder and antisocial personality disorder. *Id.* at 124. . . . Dr. Levin opined that based on Jeffrey's explosive personality and Petitioner's dependant personality, he could conclude that Jeffrey substantially dominated Petitioner. *Id.* at 131–32. On cross-examination, Dr. Levin testified that although Petitioner was diagnosed as having antisocial personality disorder[11], Petitioner "barely met" the criteria for this diagnosis and was really more of a dependant personality. *Id.* at 162.

(RE71, pp. 73-76).

---

[11] Anti-social Personality Disorder is not mitigating, and would have been before the jury had this witness testified. *Ponticelli v. Secretary, Florida Dept. of Corrections*, 690 F.3d 1271, 1301-1302 (11th Cir. 2012); *Martin v. State*, 2012 WL 4125813, 33-34 (Fla. Sept 20, 2012).

The District Court described the disposition in State Court:

> The trial court denied this claim, finding that the testimony presented was not entirely exculpatory (Ex. L-3 at 481). **The court found the surviving victims' testimony at the 1998 penalty phase, in which they stated Petitioner was in charge, clearly contradicted this new evidence that Jeffrey was in control. The court determined that the victims' testimony was more credible.** *Id.* at 481-82. **The court concluded that the testimony presented at the evidentiary hearing was not credible because Jeffrey had a clear motive to fabricate or exaggerate now that he had received a life sentence, whereas there was no motive for the victims to contrive their testimony.** *Id.* at 482. After weighing the evidence, the court determined that there was no probability that Petitioner would receive a life sentence if the jury heard this newly discovered evidence. *Id.* On appeal, the Supreme Court of Florida affirmed the denial of this claim. *Farina III*, 937 So. 2d at 623. **The court held that competent substantial evidence supported the trial court's findings that the new evidence was incredible** and would not have produced a recommendation of a life sentence upon retrial. *Id.*

(RE71, p. 76-77).

The District Court properly deferred to the express credibility determinations made by the Florida Courts:

> Although Petitioner presented newly discovered evidence to support a finding of this mitigating circumstance [the substantial domination of another mitigator] **the Florida courts found that the witnesses that testified at the post-conviction evidentiary hearing were not credible, and therefore their testimony would not support a finding of this mitigator. This Court must accept the state court's credibility determination.** *See, e.g., Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsels'] testimony over [petitioner's].") Additionally, the state

```
court's  factual  findings  are  presumed  correct,  and
Petitioner  has  not  rebutted  those  findings  by  clear
and  convincing  evidence.  28  U.S.C.  §  2254(e)(1);
Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001).
```

(RE71, pp. 71-72).

That deference is correct as a matter of law, and Farina

has shown no reason that this Court should ignore well-settled

habeas law. The state court no-credibility finding is

dispositive, and the District Court properly refused to

substitute its judgment for that of the State court that saw the

witnesses testify. Assuming a federal claim of some sort is

presented, it was correctly denied by the District Court.

On pages 44-45 of his brief, Farina says that *Porter v.*

*McCollum* supplies a basis for relief. The District Court

rejected the *Porter*-based argument:

```
Contrary  to  Petitioner's  assertions,  the  state  court
did  not  unreasonably  discount  mitigation  evidence  but
instead  found  the  testimony  was  not  credible.  Cf.
Porter  v.  McCollum,  ---  U.S.  ----,  ----,  130  S.Ct.
447,  455,  175  L.Ed.2d  398  (2009)  (finding  that  the
Florida  Supreme  Court  unreasonably  discounted
mitigation  evidence  produced  at  the  post-conviction
evidentiary  hearing).  In  Porter,  there  was  no
determination  that  the  mitigation  testimony  was  not
credible. . . . In contrast to Porter, the state court
here found that the additional mitigation evidence was
not credible, and thus the statutory mitigator was not
established.
```

(RE71, p. 78). *Porter* is of no help to Farina, and the District

Court properly declined to attempt to put a square peg in a

round hole.

Finally, as the District Court found:

Even if the jury had been presented this additional
mitigation testimony, there is no reasonable
probability that the jury would have found that
Petitioner was under the dominion or control of
Jeffrey. . . . Similar to *Lawrence* [*v. State*, 846 So.
2d 440, 449 (Fla. 2003)]*,* here Petitioner planned the
robbery and helped to purchase items to be used during
the robbery. Although several family members testified
that Jeffrey had a more dominant personality, **there is
no indication that Jeffrey coerced Petitioner into
committing this crime.**

. . .

Additionally, during the penalty phase, **the three
surviving victims testified that Petitioner appeared
to be in control and was telling Jeffrey what to do**
(Ex. F-21 at 1268; Ex. F-22 at 1485; Ex. F-23 at
1543). Victim Gordon also testified that prior to
making the employees enter the freezer, Petitioner
stated that he had "one more precaution to take" (Ex.
F-22 at 1488). Moreover, evidence was introduced that
**Petitioner planned the robbery two to three weeks
before the crime was committed.** Petitioner had
previously worked at the restaurant and knew the
employees. Furthermore, while Dr. Levin testified
during the penalty phase regarding Petitioner's
dependant personality disorder (Ex. F-26), the jury
also heard the taped conversation in which Petitioner
stated that they should have sliced the victims'
throats and shut the freezer door so as not to be
caught.

(RE71, pp. 78-80). Those findings are supported by the evidence

from the State court hearing, and are dispositive of Farina's

claim. Farina has done nothing to call the findings of the State

courts into question, and has made no showing that would entitle

him to relief of any sort. If there is a federal claim of some

sort to be found within Claim 2, it fails under settled AEDPA

deference principles because no clearly established federal law supports granting relief.

### III. THE *BATSON* CLAIM

On pages 48-56 of his brief, Farina says that he is entitled to relief on his claim that the State engaged in "purposeful discrimination" in the exercise of its peremptory challenges. The Florida Supreme Court denied relief on this claim on direct appeal, and the District Court, in turn, found that the State denial of relief was neither contrary to, nor an unreasonable application of, clearly established federal law. This claim necessarily turns almost solely on the facts of this specific case.

On direct appeal, the Florida Supreme Court decided this claim in the following way:

> In the instant case, the State peremptorily struck juror Edwards on two grounds: that she expressed concern over her son's guilt for a drug conviction; and that she voiced hesitancy about the death penalty. The trial judge ruled that "prosecutors very frequently challenge jurors for those types of reasons. So I find it to be a race-neutral reason that is very common in our system for challenging jurors." The State peremptorily struck juror Hilton on the grounds that she had been thirty minutes late in arriving for *voir dire* on the previous day, was tentative in her support of the death penalty, was a member of a church that was involved in a prison ministry program, and might allow feelings of Christian forgiveness to creep into her decision. The trial judge ruled that he was "supposed to just sustain the challenge if I find that the attorney making it is making it in his or her world of good faith, not whether I agree with it or not. And I don't

think that [the prosecutor] is making a racial-based
challenge ... And I don't think [the prosecutor] is
lying to me." Based upon our review of the *voir dire*
record **and the fact that the court's rulings turned on
an assessment of the genuineness of the State's
reasons for striking these two prospective jurors,** we
conclude that the trial court's ruling was not clearly
erroneous and Anthony is not entitled to relief on
this claim.

*Farina v. State*, 801 So. 2d 44, 49-50 (Fla. 2001). Those

findings are based in the credibility findings of the Florida

trial court -- as such, they are not, and cannot be, contrary

to, or an unreasonable application of, any clearly established

federal law. The District Court properly denied relief. *Walls v.*

*Buss*, 658 F.3d 1274, 1282 (11th Cir. 2011); *Hightower v. Terry*,

459 F.3d 1067, 1072 (11th Cir. 2006).

To the extent that further discussion is necessary, the

District Court discussed this claim at length, addressing the

jurors at issue (Edwards and Hilton), as well as the other

pertinent jurors:

The State gave a race-neutral reason for its
peremptory strike, namely, that it was arguable that
Edwards felt her son was wrongfully prosecuted and
therefore might be biased against the State. There is
no indication that the State was purposefully
discriminating by exercising the peremptory strike
against juror Edwards. However, Petitioner argues that
other prospective jurors, such as juror Ogara, had
family members who were accused and convicted of a
crime and were not stricken from the jury . [footnote
omitted][12] . . .

───────────────

[12] Veniremen Ogara, Grimes and Bell are the only ones mentioned
in Farina's brief. The omitted footnote discusses other
"comparative" jurors who are not mentioned by Farina.

43

During voir dire, prospective juror Ogara told the court that her nephew had been accused of killing his father. Ogara stated that the crime occurred about twenty years prior in New York. Ogara stated that the case was handled properly and her nephew served time in a youth prison. Id. at 69–70. Ogara felt that the legal system functioned as it should have and that the case was handled in an appropriate way. Unlike Ogara's statements to the court, Edwards statements could be read as meaning that she believed her son and his friends were wrongfully prosecuted for selling drugs because they were never caught with drugs. Contrary to Edwards' statements, Ogara did not waiver in her statement that her nephew's case was properly handled. Ogara did not allege in any way that she thought her nephew was wrongfully prosecuted. In comparing the State's treatment of these two jurors, the Court finds that the prosecutor's reasons for striking Edwards were plausible. There is no indication that the State treated Edwards differently on account of her race. The Court defers to the state court's finding that the State's race-neutral reason for striking juror Edwards was sufficient.

Additionally, with respect to prospective juror Hilton, it was noted that she was an active member of the Hope Baptist Church in Holly Hill, Florida. Hilton's church was involved in prison ministry, and she stated that the church held Bible classes at the county jail. Hilton had not participated in the prison ministry program but had spoken to her sister about her participation. Hilton believed that the program was worthwhile. Moreover, Hilton thought that counseling and rehabilitation were important. The State then further questioned Hilton regarding her religion and whether a religious person should have their punishment erased under state law. Hilton stated that even if God forgives a person for his sins, that person still would have to be punished pursuant to man's law.

The State moved to strike Hilton for cause, arguing that she was thirty or forty-five minutes late for *voir dire*, possibly due to her oversleeping. The prosecutor also asserted that Hilton was tentative about the death penalty because she belonged to a

church that was active in prison ministry. The trial court denied the cause challenge because Hilton indicated that she could follow the law. The prosecutor then used a peremptory challenge on Hilton for the arguments he previously made. Defense counsel argued that the State had not given a valid race-neutral reason for the challenge. The trial court found that the reasons the prosecutor had given were made in good faith and were not pretextual.

The Court agrees the State gave a sufficient race-neutral reason for its challenge of Hilton. Hilton indicated that her sister was involved in prison ministry and felt that such programs were important and worthwhile, thus indicating that she might be biased in favor of the defense. Moreover, the State's argument that Hilton was thirty or forty-five minutes late due to oversleeping, indicating that she did not take jury duty seriously and could be late in the future, are also well-taken. There is no indication that the State was purposefully discriminating with respect to this juror.

Additionally, Petitioner argues that two other jurors, Grimes and Bell, were also religious and involved in their church but were not stricken, thus indicating that the State's reasons for striking Hilton were implausible. The Court first notes that juror **Grimes was not a member of Petitioner's jury and was stricken by defense counsel** Furthermore, although prospective juror Bell was involved in her church and had been involved in prison ministry, Bell stated she only volunteered once with the prison ministry and felt that it was not the type of activity that she wanted to be involved with, thereby indicating that she did not feel prison ministry was a worthwhile activity Bell further stated that she would follow the court's instructions, would consider all mitigation evidence, and would apply the law and reach a sentence. Bell was not late to jury duty. While the State did not move to strike Bell, and Bell was in fact seated as an alternate, the Court cannot find that the State's disparate treatment of Bell and Hilton is a result of discrimination. Bell's answers indicate that she was less sympathetic toward prisoners, whereas Hilton's answers could be viewed as being sympathetic to the defense. **Moreover, as the Court noted, Hilton's late**

45

**arrival was viewed by the State as a potential pitfall**, because if she were late again she would cost the court time and money. **The State's reasons for striking juror Hilton, in the context of the entire *voir dire* proceeding**, were not implausible and therefore the Court defers to the state court's finding that the State's race-neutral reasons were sufficient.

(RE71, pp. 31-34). (internal citations omitted). The Florida courts, and the District Court, explicitly followed the *Batson* requirement that "requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it." *Miller-El v. Dretke*, 545 U.S. 231, 251-252, 125 S.Ct. 2317, 2331-2332 (2005). Even though *Miller-El* post-dates Farina's direct appeal, the Florida Supreme Court fully complied with the requirements of that case.[13] Farina has offered no more than his disagreement with the result as a basis for relief.

## CONCLUSION

WHEREFORE, based on the foregoing, the State submits that the denial of relief should be affirmed in all respects.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

s/Kenneth S. Nunnelley
KENNETH S. NUNNELLEY

---

[13] *Miller-El* is distinguishable on its facts, which include "widely known evidence of the general policy of the Dallas County District Attorney's Office to exclude black venire members from juries" and the use of a procedure known in Texas as the "jury shuffle." *Miller-El v. Dretke*, 545 U.S. 231, 253, 125 S.Ct. 2317, 2332.

```
                              ASSISTANT ATTORNEY GENERAL
                              Florida Bar #998818
                              444 Seabreeze Blvd. 5th FL
                              Daytona Beach, FL 32118
                              (386) 238-4990
                              Fax-(386) 226-0457
                              Ken.Nunnelley@myfloridalegal.com
                              CapApp@myfloridalegal.com
```

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 13,378 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 13th, 2012, I have uploaded the foregoing **ANSWER BRIEF OF RESPONDENTS-APPELLEES** with the Clerk of the Court in Adobe Acrobat® PDF file format. I have provided a copy of the foregoing to the Attorney for the Petitioner-Appellant by e-mail service to: **Maria E. DeLiberato**, Assistant Capital Collateral Counsel; **Marie-Louise Parmer**, Assistant Capital Collateral Counsel, Deliberato@ccmr.state.fl.us, Parmer@ccmr.state.fl.us, support@ccmr.state.fl.us; and **Pierre H. Bergeron** pierre.bergeron@squiresanders.com; **J. Phillip Calabrese** phil.calabrese@squiresanders.com; and U.S. Mail to: **Brian D. Netter**, Mayer Brown, LLP 1999 K. Street NW, Washington, DC 20006 on this 13th day of December, 2012.

```
                              s/Kenneth S. Nunnelley
                              Of Counsel
```